112 F.3d 516
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Dale R. KENT; Lady Cecelia, Inc., Plaintiffs-Appellants,
v.
The NATIONAL MARINE FISHERIES SERVICE, Defendant-Appellee.
 No. 96-35048.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 9, 1996.
Decided April 25, 1997.
 
 Before: NOONAN, THOMPSON, and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Lady Cecelia, Inc. (LCI) and a shareholder, Dale R. Kent (collectively, claimants), appeal the district court's order granting summary judgment in favor of the National Marine Fisheries Service (NMFS) and denying its motion for summary judgment. We affirm the district court's order.
 
 FACTS
 
 3
 Kent purchased the Garibaldi Dry Dock Company (Garibaldi) in August or October, 1987, to build a 70-foot combination dragger/shrimper steel fishing vessel. After the purchase, Garibaldi began purchasing and constructing gear for the vessel to be constructed. The vessel itself was never constructed. Kent underwent surgery on his ear on October 3, 1987, and had complications related to his ear condition during the remainder of 1987 and 1988.
 
 
 4
 At some point, Kent entered into a partnership with his son-in-law, Bob Rebuth. Kent represented to NMFS's Regional Director (Director) in January, 1994, that he and Rebuth formed a partnership for the purpose of purchasing Garibaldi on October 28, 1987. The Director accepted this representation. Kent now claims that he alone purchased Garibaldi and that the partnership was formed after his surgery in October, 1987. Kent apparently made this assertion to the Permit Review Board (Board) in February, 1994. The installment note on the purchase of Garibaldi shows Kent as the sole debtor.
 
 
 5
 Rebuth purchased the Lady Cecelia, a Gulf of Mexico shrimping vessel, on September 29, 1989. Ownership of the Lady Cecelia had been transferred three times between July 6, 1988, and September 29, 1989, before being sold to Rebuth. Lady Cecelia was converted to a dragging and shrimping vessel at Garibaldi using equipment and materials purchased when Kent contemplated constructing a new vessel at Garibaldi. Lady Cecelia made groundfish landings in the fishery beginning January 8, 1991. Rebuth transferred ownership of the Lady Cecelia to LCI on May 20, 1991. Kent represented to NMFS that he purchased the Lady Cecelia in October, 1989, and converted it.
 
 
 6
 Claimants applied for a limited entry permit with a "provisional A" endorsement for Lady Cecelia. NMFS denied the permit because claimants had not purchased the Lady Cecelia by August 1, 1988, as required under the regulations. 50 C.F.R. § 663.35(a). NMFS denied Kent's hardship claim based on his illness because Kent failed to submit medical evidence and in any case claimants failed to begin conversion before August 1, 1988. Claimants appealed and requested a hearing before the Board, claiming qualification under the conversion regulation because Kent and Rebuth purchased Garibaldi in October, 1987, intending to construct a vessel. Kent explained that Lady Cecelia was purchased after his health problems arose and he and Rebuth decided it was more reasonable to purchase a boat rather than construct one. Kent's son testified at the hearing that he and Rebuth decided to purchase a vessel and convert it for economic reasons after Kent's illness forced Kent to abandon his construction plans. The Board voted to deny claimants' permit because they found no evidence of hardship under the regulations, Kent's family members should have helped when Kent's illness became known, Lady Cecelia was not purchased until after August 1, 1988, and the purchase and construction of gear by Garibaldi does not constitute conversion under the regulations.
 
 
 7
 The Director upheld the permit denial. He found that claimants did not meet the requirements for a "provisional A" endorsement during the window period. He also found that Kent's illness did not prevent the partnership of Kent and Rebuth from either constructing or purchasing and beginning conversion of a vessel before August 1, 1988.
 
 
 8
 Claimants filed this action against NMFS claiming they were entitled to a limited entry permit under the construction and conversion criteria and under the hardship exception such that NMFS's denial of a permit was arbitrary and capricious. They also claimed the denial violated their procedural rights of due process and the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-213. Both parties moved for summary judgment. The district court granted NMFS's motion and denied claimants' motion. Claimants appeal the denial under the regulations and on due process grounds; they do not appeal the decision under the ADA.
 
 ANALYSIS
 
 9
 Claimants argue the denial was erroneous because it was based on NMFS's erroneous conclusion that Kent and Rebuth formed a partnership at the time Garibaldi was purchased. We find no prejudicial error. Kent's representations regarding ownership were conflicting and there was evidence in the record to support the NMFS's conclusion. Even assuming the partnership was not formed until after Kent's operation in October, 1987, the partnership existed for almost ten months during the window period of July 11, 1984, to August 1, 1988. The conclusion that Kent's illness did not prevent commencement of construction or purchase and commencement of conversion during the window period was not arbitrary or capricious.
 
 
 10
 Claimants also argue that the purchase of Garibaldi constituted commencement of construction for purposes of the regulations. NMFS concluded that "laying a keel" required more than purchasing a dry dock and purchasing and constructing equipment. That interpretation is not plain error or contrary to the plain language of the regulations and as such we will not overturn it. Even if purchasing Garibaldi and certain equipment later used in converting Lady Cecelia constituted commencement, Kent did not meet the other requirements for a "provisional A" endorsement. Lady Cecelia made no landings of groundfish before September 30, 1990, and ownership of Lady Cecelia was transferred between August 1, 1988, and the time a permit was issued. 50 C.F.R. § 663.35(a)(2). No hardship prevented claimants from meeting the landing requirement because Kent told NMFS: "Had I know[n] that you would undertake to arbitrarily and unilaterally come up with a moratorium date that fell earlier than our entry into the fishery. I would have moved quicker than I did." He stated, "Lady Cecelia could have been in operation within 30 days [of purchase] but not knowing of limited entry deadline extensive repair and conversions were made." There was no error.
 
 
 11
 Claimants also argue NMFS failed to accept Kent's evidence of his illness. NMFS could have accepted Kent's medical evidence and still concluded that his illness did not prevent claimants from meeting the construction or conversion criteria. There was no error.
 
 
 12
 Claimants also challenge the regulations for lack of due process. This district court action, filed November 23, 1994, came too late to meet the jurisdictional requirements. See Norbird Fisheries, Inc. v. National Marine Fisheries Serv., No. 95-36160 (9th Cir. filed Apr 25, 1997).
 
 
 13
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3